UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jun Liu (A-Number: 073-822-287), | No. 2:26-cv-01057-KES-SAB (HC) |
| Petitioner, | |
| v. | ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |
| Warden, California City Detention Facility; San Diego Field Office Director, United States Immigration and Customs Enforcement; Todd Lyons, Acting Director, United States Immigration and Customs Enforcement; Kristi Noem, Secretary, United States Department of Homeland Security; Pamela Bondi, Attorney General of the United States, | Doc. 1 |
| Respondents. | |

Petitioner Jun Liu is an immigration detainee proceeding pro se with a petition for writ of habeas corpus and motion for temporary restraining order. Docs. 1, 2. For the reasons explained below, the petition for writ of habeas corpus is granted.

## I.   Background

Petitioner was born in China in 1973. *See* Doc. 1 at ¶ 1. Petitioner was admitted to the United States as a lawful permanent resident in 1999. *See* Doc. 6-1 at 4, Doc. 6-8 at 3, 13. On October 26, 2000, petitioner was convicted of possession of a designated controlled substance for sale in violation of California Health & Safety Code § 11351. Doc. 6-1 at 3; Doc. 1 at ¶ 7. Due

to that conviction, the Immigration and Naturalization Service ("INS") detained him and initiated removal proceedings on January 12, 2001. *See* Doc. 6-1 at 2–3. An immigration judge ordered petitioner removed on August 28, 2001. *See id.* However, it appears that China would not accept petitioner. INS requested a travel document from the Chinese embassy on October 19, 2001, and the Chinese embassy never provided one. Doc. 6 at 2.

INS released petitioner on an Order of Supervision on March 26, 2002. *See* Doc. 6-1 at 2–3. The regulations that authorize INS to release a noncitizen who has been ordered removed provide:

> Before making any . . . decision to release a detainee, a majority of the Review Panel members, or the Director of the HQPDU in the case of a record review, must conclude that:
>
> 1) Travel documents for the alien are not available or, in the opinion of the Service, immediate removal, while proper, is otherwise not practicable or not in the public interest;
>
> 2) The detainee is presently a non-violent person;
>
> 3) The detainee is likely to remain nonviolent if released;
>
> 4) The detainee is not likely to pose a threat to the community following release;
>
> 5) The detainee is not likely to violate the conditions of release; and
>
> 6) The detainee does not pose a significant flight risk if released.

8 C.F.R. § 241.4(e); *see also* 8 C.F.R. §§ 241.4(h)(3), (i)(6) (noting that the Executive Associate Commissioner and district director "must [also] be able to reach the conclusions set forth in paragraph (e) of this section" "[b]efore making any decision to release a detainee").

Thereafter, for nearly twenty-five years, petitioner remained under that Order of Supervision; respondents do not dispute petitioner's contention that he complied with the Order during that quarter of a century. *See* Doc. 6; Doc. 1 at ¶ 15. Petitioner and his wife married one another in the United States shortly after his release. *See* Doc. 1 at ¶ 8. Petitioner has been employed as a truck driver for the past ten years and has supported his wife, who suffers from numerous medical issues. *Id.* ¶¶ 9–12.

Immigration and Customs Enforcement ("ICE") re-detained petitioner on September 18,

2

2025, when he appeared for a scheduled check-in. Doc. 1 at ¶ 5. ICE served petitioner with a Notice of Revocation of Release. Doc. 6-5 at 1. That document states that petitioner was being re-detained because ICE had "reason to believe . . . [that] China may issue a travel document due to recent changes in circumstances."[1] *Id.* ICE submitted a travel document request to the Chinese embassy on October 15, 2025, twenty-seven days after detaining petitioner. Doc. 6 at 2. ICE then submitted another request on February 3, 2026.[2] *See id.* Over six months have passed since ICE submitted the first request, and ICE has not obtained a travel document and there is no evidence that China will issue one in the reasonably foreseeable future.

On March 23, 2026, petitioner, proceeding pro se, filed a petition for writ of habeas corpus and a motion for temporary restraining order. Docs. 1, 2. The Court set a briefing schedule on the petition, respondents filed a response, and petitioner filed a reply. Docs. 5, 6, 7.

## II.    Legal Standard

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III.    Discussion

"As a preliminary matter, the Court views Petitioner's claims through a pro se lens and

---

[1] The document does not explain what circumstance had changed. *See* Doc. 6-5 at 1.
[2] Respondents do not explain whether there was anything different about their second and first requests, other than the dates on which they were made. *See* Doc. 6.

'afford[s] him the benefit of any doubt.'" *Chun Yat Ma v. Asher*, No. C11-1797 MJP, 2012 WL 1432229, at *4 (W.D. Wash. Apr. 25, 2012).  Petitioner's pro se petition argues that his detention is no longer authorized by 8 U.S.C. § 1231, relying on *Zadvydas v. Davis*, 533 U.S. 678 (2001). *See* Doc. 1.  In *Zadvydas*, the Supreme Court read an implicit constitutional limitation into 8 U.S.C. § 1231, the statute that authorizes the detention of a noncitizen who has been ordered removed:  If, after being ordered removed, a noncitizen has been detained for six months and "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 692, 701.  Once it has been determined that "there is no significant likelihood of removal in the reasonably foreseeable future[,]" then the government must release the noncitizen. *Id.*

The regulations at 8 C.F.R. §§ 241.13(i) and 241.4(l) were promulgated "in response to the Supreme Court's" decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001). *Diouf v. Napolitano*, 634 F.3d 1081, 1089 n.10 (9th Cir. 2011); Continued Detention of Aliens Subject to Final Orders of Removal, 66 FR 56967-01 ("In light of the Supreme Court's decision in *Zadvydas*, this rule revises the Department's regulations by adding a new 8 CFR 241.13, governing certain aspects of the custody determination of a detained alien after the expiration of the removal period. Specifically, the rule provides a process for the Service to make a determination as to whether there is a significant likelihood that the alien will be removed in the reasonably foreseeable future.").  This Court and many others have found that those regulations apply in circumstances such as these and require that the government make the initial showing that there is a significant likelihood of removal in the reasonably foreseeable future. *See, e.g.*, *Yan-Ling X. v. Lyons*, 813 F. Supp. 3d 1157, 1162 (E.D. Cal. 2025); *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 149 (D. Mass. 2025).

Sections 241.13(i) and 241.4(l)—both of which are titled "Revocation of release"—apply to "[a]ny alien who has been released under an order of supervision" after being ordered removed.  8 C.F.R. § 241.13(i); *see* 8 C.F.R. § 241.4(l); *Escalante v. Noem*, No. 9:25-CV-00182-MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025); *see Nguyen*, 788 F. Supp. 3d at 146–49.

They outline the process to be followed if ICE seeks to "revoke an alien's release" and "return the alien to custody." 8 C.F.R. § 241.13(i); *see* 8 C.F.R. § 241.4(l). As petitioner was "released under an order of supervision" after being ordered removed and ICE now seeks to "revoke" that release, it is those regulations, not the framework from *Zadvydas*, which govern the issues in this case.

Section 241.13(i)(2) permits revocation of release "if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future."[3] 8 C.F.R. § 241.13(i)(2). Under this regulation, ICE bears the burden of showing there is a significant likelihood of petitioner's removal in the reasonably foreseeable future. In *Escalante*, which also dealt with a noncitizen who had been ordered removed, was subsequently released on an order of supervision, and then was re-detained, the court noted:

> Section 241.13(i)(2)[,] [which is] entitled "Revocation for removal[,]" provides that "the Service may revoke an alien's [supervised] release under this section and return the alien to custody if, on account of changed circumstances, *the Service determines* that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2) (emphasis added). Section 241.4(b)(4)[,] which is entitled "*Service determination under 8 C.F.R. 241.13*[,]" states that, after supervised release under section 241.13, "*if the Service subsequently determines*, because of a change of circumstances, that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future [to the country to which the alien was ordered removed or] a third county, the alien shall again be subject to the custody review procedures under this section." 8 C.F.R. § 241.4(b)(4) (emphasis added).

*Escalante*, 2025 WL 2206113, at *1–3. Those "regulations clearly indicate" that when ICE revokes release to effectuate removal, ICE must be able to determine that there is "a significant likelihood that the alien may be removed." *Escalante*, 2025 WL 2206113, at *3.

By requiring that ICE be able to make that showing, the regulations account for the fact that either ICE or a court would have previously found that there was no significant likelihood of

---

[3] The regulation also permits revocation if a noncitizen "violates any of the conditions of release" in the "order of supervision." 8 C.F.R. § 241.13(i)(1). Respondents do not argue in their briefing that petitioner's re-detention is currently justified under that regulation.

the noncitizen's removal or that such removal was not in the public interest.  *See* 8 C.F.R. § 241.4(e)(1) (authorizing ICE to release a detainee after the initial entry of a removal order if "[t]ravel documents for the alien are not available or, in the opinion of the Service, immediate removal, while proper, is otherwise not practicable or not in the public interest"); *Zadvydas*, 533 U.S. at 701 (authorizing courts to release a detainee who has been ordered removed once it has been determined that "there is no significant likelihood of removal in the reasonably foreseeable future").

To change the status quo, ICE must be able to identify a "changed circumstance[.]" 8 C.F.R. § 241.13(i)(2); *cf. Acevedo Duran v. Albarran*, No. 1:26-CV-01108-DC-CKD (HC), 2026 WL 539409, at *5 n.6 (E.D. Cal. Feb. 26, 2026) (explaining that when ICE has previously released a noncitizen after determining that they are not a flight risk or danger, the burden is on the government to show a changed circumstance at any future detention hearing).  Therefore, the Court must determine whether respondents have complied with the regulations by showing a "changed circumstance[]" that indicates a "significant likelihood of removal in the reasonably foreseeable future."  8 C.F.R. § 241.13(i)(2).

Respondents argue that the government submitted a new request to the Chinese embassy for a travel document and that this is a sufficient changed circumstance.  *See* Doc. 6 at 3. Respondents' argument is not persuasive.  The government requested a travel document for petitioner in 2001 and never received one.  *See* Doc. 6 at 2; *see* 8 C.F.R. § 241.4(e) (prohibiting release unless the government determines that "[t]ravel documents for the alien are not available or, in the opinion of the Service, immediate removal, while proper, is otherwise not practicable or not in the public interest").  Given their longstanding previous inability to remove petitioner to China, respondents provide no reason to believe that they will be able to remove him now.  *See Hoac v. Becerra*, No. 2:25-CV-01740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) ("Respondents have not provided any details about why a travel document could not be obtained in the past, nor have they attempted to show why obtaining a travel document is more likely this time around."); *Liu v. Carter*, No. 25-cv-03036-JWL, 2025 WL 1696526, at *2 (D. Kan. June 17, 2025) (finding that the respondents had not shown that removal was reasonably

6

foreseeable where they did not provide evidence why seeking travel documentation was more likely to be successful this time around or describe other actions taken to make the petitioner's removal more likely).  Moreover, the government submitted a new request for a travel document on October 15, 2025, over six months ago, yet they do not state whether China has provided any response to their request or when it might do so.  *See* Doc. 6.  Respondents have failed to show that there is a significant likelihood of petitioner's removal in the reasonably foreseeable future.

Detention is permissible under 8 C.F.R. § 241.13(i)(2) only if ICE can show that there is a significant likelihood of removal in the reasonably foreseeable future.  *See* 8 C.F.R. § 241.13(i)(2).  ICE re-detained petitioner without making that showing and without complying with the regulation.  "[U]nder deeply rooted principles of administrative law, not to mention common sense, government agencies are generally required to follow their own regulations."  *Fed. Defs. of New York, Inc. v. Fed. Bureau of Prisons*, 954 F.3d 118, 130 (2d Cir. 2020); *see United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265–68 (1954).  "ICE, like any agency, 'has the duty to follow its own federal regulations.'"  *Rombot v. Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017) (quoting *Haoud v. Ashcroft*, 350 F.3d 201, 205 (1st Cir. 2003)).  As ICE failed to comply with that regulation and has no basis for detaining petitioner, the Court finds that petitioner's immediate release is appropriate.  *See Yang v. Kaiser*, No. 2:25-CV-02205-DAD-AC (HC), 2025 WL 2791778, at *11 (E.D. Cal. Aug. 20, 2025) (ordering immediate release of noncitizen detained in violation of regulations); *Hoac v. Becerra*, No. 2:25-CV-01740-DC-JDP, 2025 WL 1993771, at *7 (E.D. Cal. July 16, 2025) (same); *Nguyen v. Scott*, No. 2:25-CV-01398, 2025 WL 2419288, at *28 (W.D. Wash. Aug. 21, 2025) (same).

## IV.    Conclusion and Order

Accordingly,

1.   The petition for writ of habeas corpus, Doc. 1, is GRANTED.

2.   Respondents are ORDERED to release petitioner immediately.

3.   Respondents are ORDERED to provide petitioner with a copy of this Order upon his release.

4.   Respondents are ORDERED to file a status report within seven (7) days of the date of this

7

Order confirming that petitioner was released.

5.  The Clerk of Court is directed to close this case and enter judgment for petitioner.  The Clerk is directed to serve California City Detention Center with a copy of this Order.

IT IS SO ORDERED.

Dated:    May 6, 2026

_____
UNITED STATES DISTRICT JUDGE